[No. 14038.    In Bank. — December 15, 1890.]

HENRY J. CRALL, APPELLANT, *v.* BOARD OF DIRECTORS OF POSO IRRIGATION DISTRICT, RESPONDENT.

IRRIGATION DISTRICTS — WRIGHT ACT — CONSTITUTIONAL LAW — CORPORATIONS. — The Wright act (Stats. 1887, p. 29), providing for the organization of irrigation districts, is constitutional, and the districts organized under its provisions are public corporations.

ID. — CONFIRMATION OF ORGANIZATION — PROCEEDING IN REM — STATUS OF DISTRICT — POWER TO ISSUE BONDS. — A special proceeding by the directors of an irrigation district, brought under the act supplemental to the Wright act (Stats. 1889, p. 212) providing for special proceedings in the superior court for the confirmation of the organization of the district and of the issue and sale of bonds, is in the nature of a proceeding *in rem* to determine the *status* of the district, and its power to issue valid bonds.

ID. — CONSTRUCTIVE SERVICE OF PROCESS — JURISDICTION — RES ADJUDI-
CATA. — In such proceeding, constructive service of process by publication
and posting, as prescribed by the Wright act, is sufficient to give the
court jurisdiction of the subject-matter and of the parties, and its judg-
ment is valid and binding as against them and all the world, upon all
questions involved in the case, until reversed on appeal, or set aside by
some direct proceeding instituted for that purpose.

ID. — INJUNCTION — SALE OF BONDS — DEFECTS IN ORGANIZATION — PLEA
IN BAR. — Such judgment is a valid plea in bar to an action to enjoin
the sale of bonds of the irrigation district, brought by a party construct-
ively served with process in the proceeding *in rem*, and no alleged defects
in the organization of the district can be reviewed in the injunction suit.

APPEAL from a judgment of the Superior Court of
Stanislaus County.

The facts are stated in the opinion.

*L. J. Maddux,* for Appellant.

A petition conforming to the provisions of the Wright
act is essential to the exercise of any jurisdiction in that
matter, and such jurisdiction could not be exercised by
the board unless the petition was true. (*Mulligan* v.
*Smith,* 59 Cal. 206; *Liebman* v. *City,* 11 Saw. 147; *Ziegler*
v. *Hopkins,* 117 U. S. 683.) Personal service of process
was essential to jurisdiction over the person of the plain-
tiff, in order to debar him of his defenses to the proceed-
ings for confirmation. (*Pennoyer* v. *Neff,* 95 U. S. 714;
*Stuart* v. *Palmer,* 74 N. Y. 191; 30 Am. Rep. 289; *Taylor*
v. *Porter,* 4 Hill, 146; 40 Am. Dec. 274; *Westervelt* v.
*Gregg,* 12 N. Y. 209; 62 Am. Dec. 160; *Powell's Appeal,*
29 Mich. 376; *State* v. *Fond du Lac,* 42 Wis. 298.)

*Wright & Hazen,* and *A. L. Rhodes,* for Respondent.

The confirmation act gives the superior court juris-
diction of all the proceedings in respect to organization
of the irrigation district, and differs materially from the
act referred to in *Mulligan* v. *Smith,* 59 Cal. 206. The
act could constitutionally give such jurisdiction. (*Lent*
v. *Tillson,* 72 Cal. 404.) The court acquired jurisdiction

of the plaintiff in this case, constructive service of notice being sufficient to sustain the jurisdiction. (*Davidson* v. *New Orleans*, 96 U. S. 104; *Riley* v. *Lancaster*, 39 Cal. 354; *Eitel* v. *Foote*, 39 Cal. 440; *Mayo* v. *Foley*, 40 Cal. 282; *State* v. *McGlynn*, 20 Cal. 233; 81 Am. Dec. 118; *Irwin* v. *Scriber*, 18 Cal. 499; *Boyd* v. *Blankman*, 29 Cal. 19; 87 Am. Dec. 146; *Halleck* v. *Moss*, 22 Cal. 266; *People* v. *Hagar*, 52 Cal. 171; *Barrett* v. *Carney*, 33 Cal. 536; *Friedlander* v. *Loucks*, 34 Cal. 23; *Lent* v. *Tillson*, 72 Cal. 404.) The judgment in the special proceeding is final and conclusive against all persons interested in the district or its bonds. (*Lent* v. *Tillson*, 72 Cal. 404; *San Francisco* v. *Certain Real Estate*, 42 Cal. 519.)

BELCHER, C. C. — An irrigation district known as the Poso Irrigation District was organized by the board of supervisors of Kern County, under the act passed by the legislature of this state, and commonly called the Wright act. (Stats. 1887, p. 29.) A board of directors for the district was elected, and the members qualified and entered upon the discharge of their duties. In performance of the duties prescribed by the act, the board estimated and determined that the amount of five hundred thousand dollars was necessary to be raised for the purpose of constructing necessary irrigating canals and works, and acquiring the necessary property and rights therefor, and otherwise carrying out the provisions of the act. Thereupon the board called a special election, to be held on a day named, at which was submitted to the qualified electors of the district the question whether or not the bonds of the district should be issued in the amount so determined. Notice of the election was given and published in the manner and for the time prescribed by the act, and the election was held pursuant to the call. When the returns of the election were canvassed, it was found and determined that a majority of the votes cast were in favor of the issuance of the bonds,

and thereupon the board ordered that bonds of the district to the amount of five hundred thousand dollars be immediately prepared and issued in the manner and form provided by the act. Subsequently the board made another order, that the bonds to the amount of two hundred thousand dollars be offered for sale.

All of the foregoing proceedings were apparently regular, and in compliance with the provisions of the Wright act.

After the entry of the order for the sale of the bonds, the board of directors, under the act supplemental to the Wright act, "and to provide for the examination, approval, and confirmation of proceedings for the issue and sale of bonds issued under the provisions of said act" (Stats. 1889, p. 212), commenced a special proceeding in the superior court of Kern County for the purpose of having all the proceedings for the organization of the district and the issue of the bonds judicially examined, approved, and confirmed. A petition for confirmation, in due form, was filed, and thereupon the court fixed a day for the hearing of the petition, and ordered notice to be given and published for the time and in the manner prescribed by the act; and in pursuance of this order notice in proper form was duly given and published.

At the time appointed, the matter was heard upon oral and documentary evidence, and thereafter the court filed its findings of fact and conclusions of law, and entered its judgment approving and confirming all of the proceedings for the organization of the district and for the issue of bonds; and it "further ordered, adjudged, and decreed that the said Poso Irrigation District, ever since its organization as aforesaid, has been, and now is, a duly and legally organized irrigation district, and that it possesses full power and authority to issue and sell, from time to time, the bonds of said district to the amount of five hundred thousand dollars."

The plaintiff herein did not appear in the confirmation proceedings, but after the entry of the judgment of confirmation, he commenced this action to obtain a decree enjoining the sale of the bonds.

For the purpose of showing that the plaintiff is a proper party to bring the action, the complaint alleges that he is the owner of lands within the district, and that they will be subject to assessment to raise money to pay the bonds, if they should be sold. It then, after stating facts sufficient to show that there was, in form, a regular organization of the district, and an apparent compliance with the provisions of the statute for the issue of bonds, proceeds to allege that the board of directors has no power to issue or sell the bonds, because, — 1. The petition which was presented to the board of supervisors for the organization of the district was not in truth signed by fifty freeholders, nor by a majority of the freeholders, then or at any time owning land within the proposed district, and that not more than thirty of the persons whose names purport to have been signed to the petition ever were freeholders within the district; 2. The notice of the time and place when and where the election for the organization of the district would be held was not in fact published for the full period prescribed by law; 3. The lands of plaintiff were not susceptible of irrigation by the same system of works applicable to the other lands of the district, and they would not be benefited by irrigation thereby; 4. The notice of the special election upon the question whether bonds should be issued was not published or posted for the full period prescribed by law; 5. The board of directors wrongfully and unlawfully estimated and determined that it was necessary to raise five hundred thousand dollars for the purposes of the district, when in fact it was necessary to raise only two hundred thousand dollars for those purposes.

The answer of the defendant sets up the judgment

of confirmation in bar of the action, and is, in effect, that the matters of irregularity and illegality stated in the complaint were conclusively determined by that judgment. To the answer, the plaintiff filed a general demurrer, and thereupon, the vital question in the case being whether the plaintiff was estopped by the judgment of confirmation, the parties stipulated that final judgment should be rendered in accordance with the decision upon the demurrer. The court overruled the demurrer, and rendered judgment for the defendant. From that judgment the plaintiff appeals.

There can no longer be any question that the Wright act is constitutional, and that irrigation districts organized under its provisions, like reclamation districts, are public corporations. (*Turlock Irrigation District* v. *Williams*, 76 Cal. 360; *Central Irrigation District* v. *De Lappe*, 79 Cal. 351.) The districts are authorized to construct irrigation works, and to that end to issue bonds bearing interest at the rate of six per cent per annum, the interest payable semi-annually, and the principal in installments extending over twenty years. These bonds are, from time to time, to be offered for sale, and to be sold to the highest responsible bidder, provided that not less than ninety per cent of their face value shall be accepted. And they are to be paid, interest and principal, by revenue derived from an annual assessment upon the real property of the district.

It is a matter of every-day observation that bonds bearing such a rate of interest, and about whose validity and payment at maturity there is no question, can be readily sold for considerably more than their face value, while bonds which are liable to be assailed and questioned, years after their issue, by any one who is required to contribute to their payment, are reluctantly taken at any price. It was doubtless for the purpose of settling all these matters in advance, and thereby making the bonds of irrigation districts more readily salable,

and at better prices than they would otherwise command, that the legislature passed the confirmation act, providing that the districts might, before offering any of their bonds for sale, have all questions affecting their validity judicially and finally determined.

The confirmation proceeding is denominated in the act a special proceeding, and it is clearly in the nature of a proceeding *in rem,* the object being to determine the *status* of the district and its power to issue valid bonds. The fifth section of the act is as follows:—

" Sec. 5. Upon the hearing of such special proceedings, the court shall have power and jurisdiction to examine and determine the legality and validity of, and approve and confirm, each and all of the proceedings for the organization of said district under the provisions of the said act [Wright act], from and including the petition for the organization of the district, and all other proceedings which may affect the legality or validity of said bonds, and the order for the sale, and the sale thereof." (Stats. 1889, p. 212.)

That the legislature had power to pass an act to accomplish the purposes intended by this act cannot be questioned. Nor is it pretended that the appellant did not have notice of the confirmation proceedings, or that he was in any way or for any reason prevented from appearing therein and raising all the objections which he now seeks to raise. The contention is, simply, that no process issued in those proceedings was served on him personally, and hence that he was not obliged to appear, and his rights are not barred by the judgment, but he is at liberty now to make " any attack upon the proceedings for the issue of bonds, including the proceedings for the organization of the district, that he could have made had there been no judgment of confirmation." To hold otherwise, it is claimed, would have the effect of depriving him of his property without due process of law.

It will be observed that the question is, not whether the valuation of the land for the purposes of assessment can be made and definitely fixed without further notice to the land-owner, nor whether the assessment can be collected without further notice, but simply, whether the notice by publication and posting was sufficient to give the court jurisdiction to determine that the proceedings taken for the organization and on behalf of the district were such as will enable the district to create a valid debt to be paid by the levy of assessments in the manner provided by the Wright act.

In our opinion, the contention of appellant cannot be sustained. It was not necessary, we think, that personal service be made upon all or any of the land-owners of the district, in order to give the court jurisdiction and power to render a judgment valid and binding as against them and all the world upon all the questions involved in the case. And this view seems to be well supported by the authorities.

In *Pennoyer* v. *Neff*, 95 U. S. 727, — a case largely relied on by appellant, — the supreme court of the United States held that, where the entire object of the action is to determine the personal rights and obligations of the defendants, that is, where the suit is merely *in personam*, constructive service by publication upon a non-resident of the state is insufficient for any purpose, and at the same time declared that "such service may answer in all actions which are substantially proceedings *in rem*."

In this state, constructive notice, given in such way as is provided by statute, of proceedings for the probate of wills, and of all proceedings in the administration of estates of decedents, has always been regarded as sufficient. In *State* v. *McGlynn*, 20 Cal. 233, 81 Am. Dec. 118, it was held that the probating of a will was a proceeding *in rem*, and that the decree admitting a will to probate was conclusive, not only upon the parties who were before the court, but upon all other persons. In its opinion the

court quotes the following language, used by the supreme court of Vermont in *Woodruff* v. *Taylor*, 20 Vt. 65: "The probate of a will I conceive to be a familiar instance of a proceeding *in rem* in this state. The proceeding is in form and substance upon the will itself. No process is issued against any one; but all persons interested in determining the state or condition of the instrument are constructively notified by a newspaper publication to appear and contest the probate; and the judgment is, not that this or that person shall pay a sum of money or do any particular act, but that the instrument is, or is not, the will of the testator. It determines the *status* of the subject-matter of the proceeding. The judgment is upon the thing itself; and when the proper steps required by law are taken, the judgment is conclusive, and makes the instrument, as to all the world (at least so far as the property of the testator within this state is concerned), just what the judgment declares it to be." (See also *In Matter of the Will of Warfield*, 22 Cal. 51; 83 Am. Dec. 49; *Rogers* v. *King*, 22 Cal. 72; *Halleck* v. *Moss*, 22 Cal. 266; *Irwin* v. *Scriber*, 18 Cal. 500.)

So in an action brought against the land, and all owners and claimants known and unknown, to recover a street assessment, it has been held that constructive service of process may be sufficient to authorize the court to render a judgment which is conclusive and binding upon all the world, until reversed on appeal, or set aside by some direct proceeding brought for that purpose. (*Mayo* v. *Ah Loy*, 32 Cal. 477; 91 Am. Dec. 595; *People* v. *Doe*, 36 Cal. 220; *Eitel* v. *Foote*, 39 Cal. 439.)

So, too, in insolvency proceedings, it has been held that notice by publication is sufficient to give the court jurisdiction over the subject-matter and the parties. (*Bennett* v. *His Creditors*, 22 Cal. 38; *Friedlander* v. *Loucks*, 34 Cal. 18; *Arnold* v. *Kahn*, 67 Cal. 472.)

Many other analogous cases might be cited, but we think the above sufficient.

The decision in *Mulligan* v. *Smith*, 59 Cal. 206, cited by appellant, is not in conflict with what has been said. That case was ejectment to recover possession of a lot of land which had been sold to pay an assessment under the Montgomery Avenue act. The act required that a petition signed by a majority of the owners in frontage of the property to be charged with the costs of the improvement be presented to the mayor; that a board of public works be then organized, and that it make a report showing the benefits and damages resulting from the improvement to each piece of property within the district to be assessed, and that the report be presented to the county court for approval and confirmation.

This court, on page 231, said: "In no part of the statute does it appear that any provisions were made for any notice to be given to property owners of the proceedings authorized to be taken before the mayor, or of the proceedings by the board of public works, or in the county court, against the property declared to be benefited by the opening of the avenue. No personal notice was in fact given to the defendant of the presentation of the petition, or of any of the acts of the board. Neither the mayor nor the board was required to give notice until the board had completed the report of its work. Then the statute required it to publish a notice for twenty days, in two daily newspapers printed and published in the city and county of San Francisco, that the report would be open for the inspection of all parties interested, at the office of the board, every day, during ordinary business hours, for thirty days."

And again, on page 232: "Nowhere in the statute is the petition made part of the report, or of the *data* or documents used in making it. Nor is it anywhere required that the board or the mayor shall return it to the court, or file it there or elsewhere. The court had therefore no jurisdiction of the petition,— no power to adjudge upon its execution; and it could not assume

jurisdiction of it, or by its judgment decide upon its sufficiency and validity, so as to conclude the defendant. And in adjudicating upon the report itself, the court acquired no jurisdiction of the person or property of the defendant, so as to determine his rights. Both, it is true, were within the territorial limits of the jurisdiction of the court, but no actual or substituted process of law had been served upon one or the other."

It was accordingly held that the court below rightly admitted evidence to show that the petition was not signed by the owners of a majority in frontage of the lands assessable for the opening of the avenue.

On the other hand, our attention is called to *Lent v. Tillson*, 72 Cal. 404, in which was involved the validity of the proceedings taken for the widening of Dupont Street, in the city and county of San Francisco, under the provisions of an act passed for that purpose. It was held, in an able and elaborate opinion by Mr. Justice Temple, that notice by publication, as required by the act, was sufficient to constitute due process of law, by which all persons whose rights were affected by the proceedings had before the county court were brought into court, and was sufficient from that time on to charge them with notice of everything done, and to uphold the final order of the court.

We conclude that the court below had jurisdiction in the confirmation proceedings of the subject-matter and the parties, and that its judgment is conclusive and binding upon the defendant and all the world, until reversed on appeal, or set aside by some direct proceeding instituted for that purpose.

We therefore advise that the judgment be affirmed.

VANCLIEF, C., and HAYNE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment is affirmed.