[Civ. No. 15297.  Second Dist., Div. Three.  Jan. 16, 1947.]

Estate of WILAFRED HAZEL HENDRIX, Deceased. CALIFORNIA TRUST COMPANY, as Executor, etc., Petitioner, v. BURNELL INSTITUTE OF SPIRITUAL INSTRUCTION, Appellant; U. S. VETERNS' ADMINISTRATION et al., Respondents.

Percilla Lawyer Randolph for Appellant.

No appearance for Petitioner.

Harold Judson, Assistant Solicitor General, Charles H. Carr, United States Attorney, Ronald Walker, Clyde C. Downing, Assistant United States Attorneys, John T. Fowler, Department of Justice, and Carl B. Sturzenacker for Respondents.

SHINN, J.—By the will of Wilafred Hazel Hendrix, the executor was directed to pay all just and provable debts, funeral expenses, expenses of last illness and of administration. The estate which remained was disposed of as follows: Arthur Smittcamp was given the real property which was the home of the decedent, furniture, motor vehicles, equipment, livestock, poultry, etc., on the premises, and all money on desposit in banks in the State of California; Mary Lamoreaux Burnell was given Mrs. Hendrix' books and papers pertaining to metaphysics and "Instruction in Truth"; a former husband, George H. Scott, all shares of stock of Scott and Fitzer Company owned by Mrs. Hendrix, and provision was made in paragraph Eighth reading as follows: "At the present time I own property in the City of Lakewood, County of Cuyahoga, State of Ohio, which is of record in my former

name of Wilafred Hazel Scott, and I hereby authorize my executor to appoint such ancillary administrator therein as may be required, but if for any reason my executor cannot make such appointment, then I nominate and appoint RAY D. JOHNSON of Van Nuys, California, to be the ancillary administrator for my estate located in said State of Ohio. I direct that my property in said State of Ohio be forthwith sold and of and from the sale proceeds I give, devise and bequeath to said ARTHUR SMITTCAMP the sum of Nineteen Hundred and Twenty Dollars, and the remainder thereof together with any residue of my estate that there may be I give, devise and bequeath in equal shares, share and share alike, to UNITED STATES VETERANS ADMINISTRATION and BURNELL INSTITUTE OF SPIRITUAL INSTRUCTION—a non-profit California corporation, whose principal place of business is located in Los Angeles County, California—for the purpose of rendering to disabled veterans of the world war and the adherents of said Institute, such aid, comfort, assistance and spiritual instruction as may to them be most helpful and profitable, determinable by said respective organizations.''

The first account of the executor was approved and an order was made for partial distribution, under which some property was distributed. A second and final account was filed showing the estate left for distribution to be of the value of $14,229.10, of which $4,729.10 was in cash and the remainder real estate which was devised to Arthur Smittcamp, of the appraised value of $9,500. The account was settled and distribution was ordered. So far as material here, the decree distributed the real property to Arthur Smittcamp, distributed to his assignee $1,920, less certain deductions on an adjustment of accounts, from the proceeds of the sale of the Ohio property, and distributed to the United States Treasury for credit to the ''General Post Fund National Homes, Veterans' Administration'' and to Burnell Institute of Spiritual Instruction all the rest, residue and remainder of the estate in equal shares, ''provided that the proper adjustment shall be made from the share of the Burnell Institute of Spiritual Instruction of $268.88 paid to the State of Ohio for inheritance taxes on its share of the estate.'' Approximately $8,000 was received by the executor from the ancillary administrator in Ohio as proceeeds from the sale of the real property in that

state. This amount had been reduced by payment of debts and expenses, as shown by the final account.

The Burnell Institute has appealed and presents the following grounds therefore: (1) That United States Veterans' Administration is not qualified under the laws of California to take property by will and that the shares of the estate distributed to it should have gone to the institute as residuary legatee; (2) that the debts of decedent, the expenses of last illness, the funeral, and of administration were improperly charged against the interests of the Veterans' Administration and the institute, for the reason that all devises and bequests were specific and were chargeable proportionately with such debts and expenses. Other points presented on the appeal will be mentioned later.

Section 27 of the Probate Code reads as follows: "A testamentary disposition may be made to the state, to counties, to municipal corporations, to natural persons capable by law of taking the property, to unincorporated religious, benevolent or fraternal societies or associations or lodges or branches thereof, and to corporations formed for religious, scientific, literary, or solely educational or hospital or sanatorium purposes, or primarily for the public preservation of forests and natural scenery, or to maintain public libraries, museums or art galleries, or for similar public purposes. No other corporation can take under a will, unless expressly authorized by statute."

The institute filed objections to the final account, which caused the court to have a trial and to consider the questions which are presented upon the present appeal. The court reached the following conclusions of law:

"That the bequest to the United States Veterans Administration is in fact, in contemplation of law, a bequest to the United States of America, and that the United States of America is a person or corporation authorized to take by will pursuant to Section 27 of the Probate Code of the State of California and is entitled to receive the bequest under the Will of Wilafred Hazel Hendrix, deceased.

"That all of the bequests in said will to the United States Veterans Administration and the Burnell Institute of Spiritual Instruction are residuary bequests and not specific or general bequests.

"That the Court's construction of said Will is that the intent of the testatrix was to give to the United States of

America in such a manner as would benefit the United States Veterans Administration and that the United States Treasury General Post Fund National Homes, Veterans Administration, is the proper legatee of said funds.

"It was the intent of the testatrix to place the said remainder of the proceeds of the sale of the Ohio property in the residue of the estate and all of the bequests to the Veterans Administration and the Burnell Institute of Spiritual Instruction were residuary in nature and not special or general bequests."

Appellant's contention on the first point, stated briefly and without citation of authority, is that the Veterans' Administration is solely an administrative agency "which can be abolished, enlarged, deprived of all powers, duties and functions at the will and whim of Congress," and that the bequest to such agency is in no sense a bequest to the United States. It is said that it is neither a natural person nor a corporation, and hence is not qualified to accept the bequest.

The Veterans' Administration is, of course, a governmental agency, and not the government. But the same may be said of the many other agencies, incorporated and unincorporated, and the several departments, branches and subdivisions which go to make up the structure of government. They all have existence solely as component parts of the government and it is through them that the government functions. The agency in its own authorized field of operations acts as an arm of the government and its acts are those of the government. Whatever property it acquires and holds is the property of the government. The "General Post Fund National Homes" is a designation of an operating department within the Veterans' Administration. It is clear to us that there was no error in holding that the bequest to the agency was, in effect, a bequest to the parent, United States of America.

We entertain no doubt that the United States Government is a corporation within the meaning of section 27 of the Probate Code. Corporations are either public or private; each constitutes a class as distinct as the other. When the word "corporation" is used in the Constitution or a statute, it may mean only private corporations (*Napa State Hospital* v. *Dasso*, 153 Cal. 698 [96 P. 355, 15 Ann.Cas. 910, 18 L.R.A. N.S. 643]) ; it may mean only public corporations (*People* v. *Turnbull*, 93 Cal. 630 [29 P. 224]), and as used in former

section 1275 of the Civil Code, upon which section 27 of the Probate Code is based, has been held to mean public as well as private corporations (*Estate of Bulmer*, 59 Cal. 131.) It all depends upon the sense in which the word is used. The United States Government is a corporation. (*Van Brocklin* v. *State of Tennessee*, 117 U.S. 151, 154 [6 S.Ct. 670, 29 L.Ed. 845]; *Respublica* v. *Sweers*, 1 Dall. 41, 44 [1 L.Ed. 29]; *Ohio* v. *Helvering*, 292 U.S. 360, 370 [54 S.Ct. 725, 78 L.Ed. 1307]; *Georgia* v. *Evans*, 316 U.S. 159, 161 [62 S.Ct. 972, 86 L.Ed. 1346].)

The state, counties and municipalities are authorized to take property by will, as well as private corporations formed for certain purposes, and also those that are expressly authorized by statute to take. In declaring the policy of the state in the enactment of section 27, the Legislature could scarcely have entertained a purpose to allow property to be taken by the states and by counties and local public corporations for the benefit of comparatively small groups of citizens and to deny that privilege to the United States Government, through which property would be put to beneficial use upon a much larger scale. And in impliedly extending the right to take by will to corporations expressly authorized by law to take, the Legislature has not distinguished between private and public corporations.

The Veterans' Administration is authorized by statute to take property by will. It is the successor of a corporation, "The National Home for Disabled Volunteer Soldiers," created by Act of March 3, 1865, chapter 91, 13 Statutes 509. The corporation was authorized "to receive all donations of money or property made by any person or persons for the benefit of the asylum and to hold or dispose of the same for its sole and exclusive use." By subsequent amendment (June 25, 1910, ch. 384 § 1; 36 Stats. 736), application for membership in the home was declared to constitute "a valid and binding contract between such applicant and the Board of Managers," by which personal property of a member who left no heirs surviving and which he had not disposed of by will would "pass to and vest in said Board of Managers, subject to be reclaimed by any legatee or person entitled to take the same by inheritance at any time within five years after the death of such member." These provisions, and contracts executed thereunder, were held to be valid in *United States* v. *Stevens*, 302 U.S. 623, 626-628 [58 S.Ct. 388, 82 L.Ed. 484], and in

the cases therein cited. The authorization of the managers to receive donations of money or property was, in terms, broad enough to embrace gifts by means of wills, as well as by transfers during the lifetime of the donors. In expressing the purpose of encouraging gifts for the benefit of the asylum, the word "donations" was aptly chosen and it should be given the usual interpretation, and as meaning all acquisitions of money or property coming to the asylum for which nothing is given in return. By Act of Congress of July 3, 1930, chapter 863, 46 Statutes 1016, the President was authorized to combine "The National Home for Disabled Volunteer Soldiers," and other agencies, in the Veterans' Administration. This was accomplished, and the Administration now exercises all the powers formerly exercised by the governing body of its predecessor.

In *Estate of Yule,* 57 Cal.App.2d 652 [135 P.2d 386], a bequest to the University of Washington, an unicorporated state institution, was upheld. In that case the property, although given to an unincorporated state agency, would have been administered under the control of the corporation, the State of Washington, through the unincorporated state institution and, likewise, the bequest in question here will be administered by the agency under the laws and policies of the government. The court there said (p. 654): "The testamentary provisions now before us unquestionably provide for a gift for charitable purposes to a legally constituted institution. We entertain no doubt that the Legislature in enacting section 27 of the Probate Code intended to include such institutions as the University of Washington whether or not they be designated as corporations by specific legislative enactment."

The bequest to the Veterans' Administration was a bequest to the United States Government, a corporation; the government was expressly authorized by statute to take donations of property through what is now the Veterans' Administration, and the bequest is valid. It is unnecessary to discuss the further contention of the Veterans' Administration that the Government of the United States is a "state" within the meaning of said section 27.

In presenting its second point, appellant challenges the court's construction of the will, stated in the conclusions as follows: "It was the intent of the testatrix to place the said remainder of the proceeds of the sale of the Ohio prop-

erty in the residue of the estate and all of the bequests to the Veterans Administration and the Burnell Institute of Spiritual Instruction were residuary in nature and not special or general bequests." It is claimed that this construction of the will was erroneous, for the reason that the bequest to it and to the Veterans' Administration was specific, as were all other bequests and the devise to Smittcamp, and that under section 750 of the Probate Code, all should have been charged proportionately with the debts and expenses of administration. Under that section, property given to residuary legatees and devisees must be appropriated for the payment of debts and expenses of administration before other property devised and bequeathed, and it is provided: ". . . but specific devises and legacies are exempt from such liability if it appears to the court necessary to carry into effect the intention of the testator, and there is other sufficient estate." By section 161, Probate Code, a legacy of a particular thing, specified and distinguished from all others of the same kind, belonging to the testator, is specific; a residuary legacy embraces only that which remains after all the bequests of the will are discharged. Section 163 of the same chapter reads: "The provisions of this chapter are in all cases to be controlled by a testator's express intention." Section 101 provides that a will is to be construed according to the intention of the testator, and section 103 reads, in part: "All the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole," etc. The nature of the legacy in question, whether it is specific or residual, is not to be determined from the single sentence upon which appellant relies, but from the will as a whole. The intention of the testatrix, as expressed in the will, is determinative as to the nature of the legacy. (*Estate of Dargie,* 19 Cal.App. 2d 215, 222 [64 P.2d 1131].)

After providing for the sale of the Ohio property, paragraph Eighth gave Arthur Smittcamp the sum of $1,920, and read: ". . . and the remainder thereof together with any residue of my estate that there may be I give, devise and bequeath in equal shares, share and share alike, to United States Veterans Administration and Burnell Institute of Spiritual Instruction," etc. Appellant's contention is that by the use of the words "the remainder thereof" testatrix intended to give to the Veterans' Administration and the institute the entire proceeds of the sale of the Ohio property, less the sum of $1,920 bequeathed to Arthur Smittcamp, and that the bequest

was specific. The court, in looking beyond the single sentence upon which appellant relies, to other provisions of the will, would find that although the executor was directed to pay the debts, funeral expenses, expenses of last illness and of administration, no funds were designated for this purpose. The devise and the legacy to Arthur Smittcamp, the bequest to Mary Lamoreaux Burnell of the books pertaining to metaphysics and "Instruction in Truth," and the bequest of corporate stock to George H. Scott were all specific. Although the Veterans' Administration and the institute were named as residuary legatees, all the estate was disposed of by will and there would be no residue, unless the proceeds of the sale of the Ohio property, reduced by the sum of $1,920 given to Arthur Smittcamp, were intended to constitute the residue. There was but a small amount of money in bank at the time of Mrs. Hendrix' death, and under the will no sufficient funds would come to the executor with which to pay debts, expenses of administration, etc., except through the sale of the Ohio property, which would provide more than ample funds for that purpose. It would appear altogether probable, from the terms of the will, that Mrs. Hendrix wished the specific properties to go to three individuals in whom she had a special interest, undiminished by liens thereon in the amount of the debts and other obligations which she had directed to be paid. This intention was not to be defeated by her failure to specifically charge the funds that would be received from the sale of the Ohio property with the payment of the debts, etc. When effect is given to the intention of the testatrix that the shares of Arthur Smittcamp, Mary Lamoreaux Burnell and George H. Scott should go to them intact, it necessarily follows that the rights of the Veterans' Administration and the institute were only those of residuary legatees. It was consistent with this purpose of the testatrix to construe the words "the remainder thereof," namely, the funds to be received from the Ohio administration, as meaning the sum that remained after deduction of the legacy to Arthur Smittcamp, and also the obligations of the estate which the executor was directed to pay. The several provisions of the will were brought in harmony by the construction given to them by the court. The decree, in our opinion, reflects the expressed wishes of Mrs. Hendrix.

The further contention is made that the expenses of administration in California should have been charged against

the estate, exclusive of that received from the sale of the Ohio property. Under sections 900, 901, and 910 of the Probate Code, the compensation of the executor and his attorney was properly computed upon the amount of the estate which was accounted for.

It is also claimed that allowances for extraordinary services of the executor and his attorney should have been charged against the interests taken under the will "which occasioned said services." This was done. It appears from the report that the services for which extraordinary compensation was allowed were occasioned by the alleged uncertainties of the provisions which were brought in question by appellant. Finally, we do not find in the record a basis for the criticism that the court failed to charge against Arthur Smittcamp the expenses of maintaining the real property which was devised to him.

The decree of distribution, judgment, and orders appealed from are affirmed.

Desmond, P. J., and Wood, J., concurred.